BYRON J. STROUGH, APPELLANT, v. GEORGE WILDER, RESPONDENT, IMPLEADED WITH OTHERS.

1 *Revised Statutes (p. 738, sec. 137) requiring a grant in fee to be acknowledged or attested — an heir-at-law is not protected by it — nor are purchasers from an heir, near or remote — when a grantee may testify as to occupation under and possession of a deed as against a purchaser from the heirs of the deceased grantor.*

An heir-at-law is, in no sense, a "purchaser" within the meaning of that term as used in section 137 of 1 Revised Statutes, 738, which provides that a grant in fee or of a freehold estate "shall not take effect, as against a purchaser or incumbrancer" until the grant is duly acknowledged, unless the execution and delivery of the grant is attested by at least one witness.

The word "purchaser" refers to a purchaser from the grantor named in the condemned grant, and does not include a purchaser from the heirs, near or remote, of the grantor.

An action of partition, brought by the plaintiff, who alleged that a Mrs. Wilder died, in 1868, seized of a certain lot of land, and that he had purchased twenty-five two hundred and sixteenths thereof of her heirs, was defended by her son, George Wilder, who answered, alleging that Mrs. Wilder conveyed the land to him by a deed dated June 20, 1855; that he immediately went into possession thereunder, and had ever since held possession, claiming to own the land under that deed.

Upon the trial of the action the defendant Wilder was allowed to testify that he occupied the property, rented it, and collected the rents since 1855.

*Held,* that he was properly allowed to do so, as the answer was relevant to the issues in the action and did not relate to a personal transaction with his deceased grantor.

*Held,* further, that he was also properly allowed to testify that he had been in possession of the deed since 1855, since which time it had been in the condition in which it was at the time of the trial.

*Simmons* v. *Havens* (101 N. Y., 427, 433) followed.

APPEAL by the plaintiff from a judgment, entered in Jefferson county upon the report of a referee dismissing the complaint, with costs, in an action for partition.

*Wayland F. Ford,* for the appellants.

*Lansing & Rogers,* for the respondent.

FOLLETT, J. :

Appeal from a judgment dismissing the complaint, with costs, entered upon the report of a referee and heard in this court on a case which contains all of the evidence.

March 27, 1847, Susannah Wilder became the owner in fee simple and possessed of the land ($\frac{61}{100}$ of an acre, called the Moffatt lot), described in the pleadings. She was then a married woman, but her husband died in 1849, since which event she has remained a widow, residing about a mile from the land with her son, George Wilder, the respondent, until July 15, 1868, when she died, intestate. Her realty, if any, descended to nine stocks, consisting of children and the descendants of deceased children.

The plaintiff began this action, partition, in August, 1885, and alleges that Mrs. Wilder died seized of the lot, and that he has purchased twenty-five two hundred and sixteenths thereof, of her heirs. All of the defendants served made default except George Wilder, who answered, alleging that Mrs. Wilder conveyed the lot to him by

a deed dated June 20, 1855; that he immediately went into possession thereunder and has ever since held possession, claiming to own the lot under that deed. George Wilder produced a warranty deed, dated June 20, 1855, purporting to convey said premises, signed and sealed by Susannah Wilder, but not acknowledged or attested by a witness. The signature was proved by two persons who saw it written, and its genuineness was not challenged by the plaintiff. The referee found that Mrs. Wilder signed and delivered this deed in 1856, and that George Wilder has been in possession of the lot since that date, claiming title thereto, under the deed.

The appellant insists that the finding that the deed was delivered is contrary to the evidence. A magistrate, who appears to have been disinterested, testified that he drafted the deed at the grantor's request, at about its date. A sister of the respondent testified (apparently against her interest) that she saw her mother sign the deed, and heard her say : " Mother said George was going to have Moffatt lot; after she signed it, George had it with other papers in box; wooden; don't know whether she delivered it to him or not; think he kept this in tin box." Respondent's wife testified that her husband kept this deed with his other papers in a tin trunk. More than thirty years had elapsed between the date of the deed and the date of the trial, and it is not singular that direct evidence of delivery could not be obtained from witnesses competent to testify. During these years the respondent occupied this lot and paid the taxes. About the only facts which militate against the inference that a delivery was made are that the lot was usually assessed to the mother; and the testimony of three witnesses that the respondent, on different occasions, said the heirs of his mother owned this lot, that there were many of them, some were minors, and the difficulties of obtaining a title would be great, and the fact that the respondent had paid small sums for deeds from three or four of the adult heirs. The respondent denied that he ever admitted to the three witnesses that the heirs of his mother owned the lot. If he said that the difficulty of obtaining deeds from the heirs of his mother, some of whom were infants, would be great, he stated the truth; and the person to whom it was said might quite naturally have inferred that the heirs held the title. It does not appear that he obtained any deed from the heirs until after the plaintiff had begun to acquire

deeds from some of the heirs; and the fact that he desired to strengthen the evidence of his title, which was to be assailed, does not prove much.

The finding that the deed was delivered should not be set aside as contrary to the evidence. But the appellant insists that, though these facts are established, and the deed is valid as between the grantor and grantee, that it is invalid as against him, because of the statute (1 R. S., 738, § 137), which provides that a grant in fee, or of a freehold estate, " shall not take effect as against a purchaser or incumbrancer " until the grant is duly acknowledged, unless the execution and delivery of the grant is attested by at least one witness. By the common law an unattested deed was valid. (*Dole* v. *Thurlow*, 12 Met., 157, 166; 4 Cruise's Dig., 31 [Greenl. ed., 47]; 2 Black. Com., 307; 3 Wash. R. P., 572.) As between the grantor and the grantee, the deed is valid, and transferred the title to the lot from the grantor to the grantee, as against all persons, except " purchasers " or " incumbrancers." (*Wood* v. *Chapin*, 13 N. Y., 509.) Neither the plaintiff nor his grantors were incumbrancers. Whether the plaintiff is a " purchaser " within the statute, is a question not free from doubt. In *Roggen* v. *Avery* (63 Barb., 65; affirmed, 65 N. Y., 592), the plaintiff alleged that he was the owner of an undivided one third of the land in dispute under an unacknowledged and unattested instrument (called in the case a deed), and the defendant claimed that after the date of this deed the grantor devised the land to her husband, who conveyed it to the defendant. It seems to have been assumed without debate, by the court and counsel, that the defendant was a purchaser within the statute, and that the only question was, whether a purchaser, with notice of the prior imperfect deed, was protected by the statute.

The reports of this case are meager, and the assumption may have rested upon the rule of law that a devisee is a purchaser, and, therefore, that the devisee was a purchaser within the statute; and that the defendant having acquired the devisee's title by purchase, was protected by the statute. However, an heir is in no sense a purchaser, is not protected by the statute; and the deed in the case at bar being valid against the grantor, her heirs took no title by descent, and they having none to convey, the plaintiff took nothing by his deed from them. The word " purchasers " refers to pur-

chasers from the grantor named in the condemned grant, and does not include "purchasers" from the heirs, near or remote, of the grantor. More than thirty years elapsed between the date of the deed (June 20, 1855), and the date of the commencement of this action, (August, 1885); more than twelve of which elapsed between the date of the deed and the death of the grantor (July 15, 1868), and more than eighteen of which elapsed between the date of the death of the grantor and the date of the commencement of this action; during all of which time the referee finds that the respondent was in possession of the land under his deed, and claiming title thereunder. The finding of this fact ought not to be disturbed; but having held that the plaintiff acquired no title under his deeds from the heirs, it is unnecessary to determine whether the statute of limitations is a bar to the action.

The competency of the respondent to testify that he had occupied the property, rented it and collected the rents since 1855, does not seem debatable. The answers were relevant to the issues in the action, and they did not relate to a personal transaction with his deceased grantor, and the respondent was not incompetent to give this evidence under section 829 of the Code of Civil Procedure.

The competency of the respondent to testify that he had been in possession of the deed since 1855, since which time it had been in the condition which it was at the time of the trial, may be debatable, because the theory of the respondent was (and he gave evidence to establish it), that his deceased grantor personally delivered the deed to him (the delivery of which was questioned), and his evidence that he had held the deed for thirty years, or since 1855, the year of its date, related nearly to the question whether his grantor personally delivered the deed to him. But we think the respondent was competent within *Simmons* v. *Havens* (101 N. Y., 427, 433). In the case cited the plaintiff asserted that her mother had executed, acknowledged and delivered to plaintiff a deed of the land in dispute, and that subsequently her mother wrongfully destroyed the deed and then gave to the defendant the deed under which he claimed. The plaintiff called her sister, who " gave testimony tending to show that this deed was delivered in her presence by Jane Haskell (the grantor) to the plaintiff." (Page 431.) The person in whose

handwriting the deed was said to have been, testified that he drew no such deed, and the magistrate before whom the deed was said to have been acknowledged, testified that he took no such acknowledgment. The plaintiff was allowed to testify that she had the deed in her possession, and that the signature was in the handwriting of her mother. This evidence related nearly to the controverted personal transaction of delivery from the mother to the plaintiff, but the plaintiff was held not incompetent under section 829, and the ruling in this case is justified by the decision cited. The fact that the respondent paid seventy-five dollars towards the purchase-price of the lot does not seem to be relevant to the issue; but it was not objected to on that ground, and we are unable to see how the fact could have harmed the plaintiff's case. The question was whether the deed was delivered, and this fact seems to have but little, if any, probative force upon this issue.

The judgment should be affirmed, with costs.

MARTIN, J., concurred; HARDIN, P. J., concurred in the result.

Judgment affirmed, with costs.